| | | |
|---|---|---|
| UNITE HERE LOCAL 1, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 09814 |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| HOST INTERNATIONAL, INC., | ) | |
| d/b/a HMS HOST, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Chicago's O'Hare International Airport, one of the world's busiest, offers travelers an array of food options, ranging from high-end sit-down restaurants to inexpensive ("inexpensive" by airport captive-market standards) grab-and-go stands. Defendant Host International, Inc. operates dozens of these diverse establishments, where the employees are members of a union, Plaintiff Unite Here Local 1. After Unite Here filed a grievance in 2014 charging that Host was not adequately staffing various O'Hare food outlets as required by their collective bargaining agreement, the company and union initially reached a settlement. But the parties have different interpretations of the settlement, and Unite Here has brought this action under the Labor Management Relations Act, 29 U.S.C. § 185, alleging that Host has reneged on various provisions of the settlement.[1] The parties told the Court that they did not see the need for formal discovery, and they filed

---

[1]Federal-question jurisdiction is proper under 28 U.S.C. § 1331.

cross motions for summary judgment relying solely on submitted documents. R. 12, Pl.'s Mot.; R. 17, Def.'s Mot. For the reasons explained in this Opinion, both motions for summary judgment are granted in part and denied in part. As it turns out, there are disputed issues of fact that do not allow for a decision on all issues just on the current paper record.

## I. Background

A collective bargaining agreement has been in place between Host and Unite Here (really, the union's Local 1 affiliate, but the Court will refer to it as Unite Here) since 2012 and is effective through June 2017. PSOF ¶ 5; *see* R. 1-1, Collective Bargaining Agreement (CBA).[2] The CBA provides for a grievance procedure for the resolution of any disputes that may arise related to its interpretation and application, culminating in arbitration if necessary. PSOF ¶¶ 6, 7. In August 2014, Unite Here filed a grievance charging that Host was regularly staffing positions earmarked for employees in the bargaining unit with management personnel, in violation of the bargaining agreement. *Id.* ¶¶ 9, 11; *see* CBA § 18-17 ("Managers may perform the work of the bargaining unit employees only in emergency situations or to train members of the bargaining unit."). In May 2014, company and union executed a "Grievance Settlement Agreement" agreeing to resolve the dispute without need for an arbitrator, followed by a mutually signed "Side Letter"

---

[2]Citations to the parties' Local Rule 56.1 Statements of Fact are "PSOF" (for Unite Here's Statement of Facts) and "DSOF" (for Host's Statement of Facts) [R. 19]. The Court cites to a party's response to one of these Statements where a fact is disputed; where only the proponent party's Statement is cited, the asserted fact is either unchallenged or noted as being merely that party's allegation.

resolving certain outstanding issues a few weeks later. PSOF ¶¶ 12, 15; *see* R. 1-2, Settlement Agreement; R. 1-2, Side Letter.

So far, the facts are not in dispute. And of course the provisions of the Settlement Agreement and the Side Letter say what they say. But the parties do contest the scope of some of these provisions, which concern requirements that Host provide additional staffing in certain positions across the airport, and whether Host's later personnel actions have run afoul of those obligations. The relevant evidence concerning these disputed issues must be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## A. Expediters

The first dispute pertains to "expediters," bargaining-unit employees who ensure that food orders are fulfilled timely and correctly. PSOF ¶ 20. Paragraph 2 of the Settlement Agreement states that Host "agrees to increase staffing" of expediters, including "2 to be placed in G Concourse: Chili's." Settlement Agreement ¶ 2(a). Unite Here, on the basis of an affidavit of one its shop stewards (who is a cook at a different restaurant),[3] alleges that Host has placed only one part-time expediter (her name is Jennifer Carlin) at the G Concourse Chili's. PSOF ¶¶ 23, 24 (citing R. 15, Boddrick Barnes Decl. ¶ 3). Unite Here avers that that information is accurate as of April 2, 2015. *Id.* Host counters, relying on the affidavit of one of its field human-resources manager, that it has staffed this Chili's with one full-time

---

[3]Each party does not dispute that the individual(s) on whom the other relies has the requisite personal knowledge and information about the staffing matters at issue.

expediter, Jennifer Cameron (it is unclear if Cameron and Carlin are in fact the same individual and is simply misnamed by one of the parties) and a second part-time expediter, Alexander Williams. Def.'s Resp. PSOF ¶ 23 (citing R. 18-1, Salem Issa Decl. ¶ 17). According to Host, Williams "floats" between several Chili's locations and occasionally gets assigned to be a cook, but returned to his regular expediter role in the end of April 2015. *Id.*

Also in relation to expediters, the Settlement Agreement provides that "[a]ny outlet with an expediter classification will have at least one expediter staffed 7 days per week for all hours when expediter work is expected to take place." Settlement Agreement ¶ 2(a). Unite Here, relying on the affidavit of another shop steward, asserts that, as of late March or early April 2015, Host has violated this requirement at several O'Hare establishments: Wicker Park Sushi (no expediter on Fridays and Saturdays), Chili's in Terminal 2 (Mondays, Wednesdays, Thursdays, Fridays, and Sundays), Chicago Blackhawks outlet (Wednesdays, when the expediter is scheduled to work as a cook), Wolfgang Puck Café (Sundays and Mondays), Macaroni Grill (Tuesdays and Saturdays), and Chili's in G Concourse (Tuesdays through Thursdays and Saturdays). PSOF ¶¶ 25-31 (citing R. 15, Charles Palacios Decl. ¶ 5). Host acknowledges that expediter work does exist at each of these venues seven days a week, Def.'s Resp. PSOF ¶ 32, but insists that it is adequately filling all of the expediter positions, with some of the vacancy due to the high rate of turnover among food service workers at O'Hare or other reasons like employees out on maternity leave, *id.* ¶¶ 25, 29-30; *see also* Issa Decl. ¶ 27.

## B. Hosts

Second, the Settlement Agreement provides for "1 host [to be] added to Macaroni Grill in order to staff 2 hosts on the pm shift" and "1 host [to be] added to Tuscany in order to staff 2 hosts in the dining room on the pm shift." Settlement Agreement ¶ 2(b). According to Unite Here, as of March 26, 2015, only one host position has been staffed at Macaroni Grill on Thursday. PSOF ¶ 35 (citing Palacios Decl. ¶ 7). Host denies this, saying that it has multiple hosts assigned to Macaroni Grill and that, if one was unavailable on occasion, it was only due to an employee not showing up to work. Def.'s Resp. PSOF ¶ 35; *see* Issa Decl. ¶ 23. Host has submitted what is purported to be a Macaroni Grill employee schedule for the week of May 1 to May 7, 2015, arguing that it shows that the restaurant is staffed with two hosts. R. 18-1, Exh. G, Macaroni Grill Schedule.

Unite Here further alleges that, as of March 26, 2015, Host has only staffed one host position at Tuscany for the daily afternoon shift. PSOF ¶ 34 (citing Palacios Decl. ¶ 8). Host concedes as much, but explains that it is due to high turnover; the company asserts that it interviewed a candidate on April 21 and "hopes to fill" the position shortly. Def.'s Resp. PSOF ¶ 34 (citing Issa Decl. ¶ 22).

## C. Floaters

Third, the parties contest whether Host has satisfied its staffing requirements for the position of "floater." Floaters cover other employees' breaks and absences, and assist during busy periods. PSOF ¶ 14. The Settlement Agreement provides that Host will hire 14 floaters. Settlement Agreement ¶ 2(e).

The Side Letter later clarified that the "[f]loater positions will report as follows: ... 1 Mid Host to Macaroni Grill." Side Letter ¶ 4(3). "Mid" refers to the mid-day shift. PSOF ¶ 38. Unite Here alleges that Host filled this floater position in June 2014, but then transferred the floater (his name is Narcisco Albis) to another location in January 2015 and never replaced him. *Id.* ¶¶ 39-43 (citing Barnes Decl. ¶ 7). But Host responds that after it transferred Albis, it hired a replacement floater for Macaroni Grill, Leon Cathey, in April 2015. Def.'s Resp. PSOF ¶ 25 (citing Issa Decl. ¶ 25).

### D. Host's Rights and Duties

Finally, the Settlement Agreement contains several other provisions concerning Host's general rights and duties that are relevant to the analysis. First, there is a provision that says that has Host agreed "to utilize its best efforts to complete the hiring [obligations] set forth ... within 12 weeks from the date of this agreement." Settlement Agreement ¶ 2(f). The parties further stipulated that "[a]ny opening created due to transfer, resignation, or termination" thereafter "will be posted the following Monday." *Id.* ¶ 4.

Paragraph 2(f) also states, "This agreement is for purposes of settlement of the underlying grievance only and does not alter [Host's] rights under Article 1.1 of the collective bargaining agreement to determine staffing requirements in accordance with business needs." *Id.* ¶ 2(f). The referenced section of the CBA deals with Host's "Management Rights," specifying that Host retains its "sole and exclusive" rights to "manage the business." CBA § 1.1. These include, but are not

limited to, the rights to: "determine qualifications for new employees and select its employees," "determine the size and composition of its work force," "cross-utilize employees within the bargaining unit," "hire, promote, transfer, assign, layoff, and recall employees," "determine job content and the amount and types of work needed," "determine and make the assignments of work," and "expand, reduce, alter, combine, transfer, assign or cease any, job, job classification, department or operation." *Id.*

## II. Legal Standards

### A. Summary Judgment

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law.

*Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### B. Labor Management Relations Act

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, "provides federal court jurisdiction over controversies involving collective bargaining agreements and also authorizes federal courts to fashion a body of federal law for the enforcement of these agreements." *Loewen Grp. Int'l, Inc. v. Haberichter*, 65 F.3d 1417, 1421 (7th Cir. 1995) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988)). This jurisdiction extends not just to the bargaining agreements themselves but to all other related contracts "between employers and labor organizations significant to the maintenance of labor peace between them." *Retail Clerks Int'l Ass'n, Local Unions Nos. 128 & 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 28 (1962) (holding that district court had subject matter jurisdiction to hear claim of alleged violation of strike settlement agreement); *accord McNealy v. Caterpillar, Inc.*, 139 F.3d 1113, 1121 (7th Cir. 1998).

Unlike most contract actions, which are governed by State law, a specially created "body of federal common law … applies to disputes arising out of collective bargaining agreements." *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 405 (7th Cir. 2002) (quoting *Sweeney v. Westvaco Co.*, 926 F.2d 29, 36 (1st Cir. 1991)). "This special solicitude reflects the fact that the

collective bargaining agreement is more than a mere contract—it is 'the charter instrument of a system of industrial self-government,'" an area of concern soundly within the domain of federal law. *Merk v. Jewel Food Stores Div. of Jewel Companies, Inc.*, 945 F.2d 889, 892 (7th Cir. 1991) (quoting *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 570 (1960) (Brennan, J., concurring)). Nonetheless, contract principles drawn from State common law may be an appropriate source of guidance, provided they are not "mechanically applied" and instead "read … with sensitivity to considerations of national labor policy." *Id.* (describing that policy as "foster[ing] industrial peace and stability"); *see also Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 457 (1957) ("[S]tate law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate [ ] federal policy.").

### III. Analysis

Unite Here brought this suit in December 2014, seeking enforcement of a number of provisions in the parties' May 2014 settlement. R. 1, Compl. Although the complaint identified several alleged staffing-level violations across O'Hare (and purportedly not a complete list at that), *id.* ¶¶ 19-26, Unite Here has limited its motion for summary judgment to the three discrete issues involving the expediters, hosts, and floaters described above. R. 13, Pl.'s Br. at 4-7. Host, in its brief in response and in support of its cross-motion, suggests that it is entitled to summary judgment as to the entirety of Unite Here's complaint (that is, there was no possible violation of the grievance settlement for any of the various outlets and positions)

based on two across-the-board arguments: the broad management-rights clause in the CBA gives it free reign to make all staffing decisions, notwithstanding the May 2014 settlement; and, that, having initially filled the positions covered by the settlement, it has no obligation to "backfill" them once they become empty again due to turnover. R. 18, Def.'s Br. at 11-13. The Court rejects the two broad arguments relied on by Host before turning to the three discrete issues raised by Unite Here's motion.

## A. Management-Rights Clause

Host focuses on language that the Settlement Agreement "does not alter [Host's] rights under Article 1.1 of the collective bargaining agreement to determine staffing requirements in accordance with business needs." Settlement Agreement ¶ 2(f). Article 1.1 of the CBA reserves to Host "sole and exclusive" rights to "manage the business," including hiring and assigning employees across the various positions at the airport and setting schedules and job content. In Host's view, this reservation of management rights "eviscerates" Unite Here's claims. Def.'s Br. at 11.

Not so. Host's interpretation is rejected because it would render most of the Settlement Agreement meaningless. If, as Host would have it, the company retained the ability to unilaterally staff its restaurants as it wished by virtue of the management-rights clause, the provisions in question—in which Host agreed to add a definite number of additional staffers in specific positions—would be about as useful as screen doors on a submarine: they would serve no actual function whatsoever, because Host could immediately turn around and do what it wanted

anyway. It is a fundamental principle of contract interpretation to give effect to each clause, "without rendering any terms meaningless." *Aeroground, Inc. v. CenterPoint Properties Trust*, 738 F.3d 810, 813 (7th Cir. 2013) (applying principle of Illinois common law). Host does not attempt to explain why the union would have provided the consideration it did, dropping the grievance about Host's use of managers to staff bargaining unit positions, for such an illusory concession.[4]

Host cannot explain why because that was not the intent of the parties, which is instead plainly reflected in their negotiated terms—that Host "agrees to increase staffing" of non-management personnel in the very exact ways outlined. Settlement Agreement ¶ 2. "The goal of contract interpretation is to ascertain the parties' intent, and in so doing, we first look to 'the plain and ordinary meaning' of the contract language." *Aeroground*, 738 F.3d at 813 (citation omitted). Indeed, this intent for Host to be so obligated is reflected in the part of the sentence in the rights-reservation clause that the company ignores: "This agreement is for purposes of settlement of the underlying grievance." Settlement Agreement ¶ 2(f). As just discussed, resolving that grievance about staffing violations involved negotiating definite steps Host would take to increase the number of employees. No doubt, the reiteration of Host's prerogatives under the management-rights clause served some role: preserving Host's previously negotiated rights to the full extent not implicated

---

[4]It is true that the Agreement also provided that Host would pay Unite Here $31,500 in damages. Settlement Agreement ¶ 1. But the thrust of the grievance that was being resolved by the settlement concerned Host's staffing practices, specifically understaffing of actual bargaining unit employees. It was to resolve disputes over these practices that the parties negotiated the very specific concessions about increased staffing levels. Host's interpretation implausibly means that those detailed negotiations were, knowingly and from the beginning, an exercise in futility.

by this new Settlement Agreement. But to the extent that the agreement, as a subsequent contract to the CBA, narrowed those staffing prerogatives in the specific and limited positions outlined, it binds Host. *See Large v. Mobile Tool Int'l, Inc.*, 724 F.3d 766, 772 (7th Cir. 2013) ("Parties are free to abrogate, change, modify, or substitute a primary contract with their mutual assent; in such a case, the original contract will remain in force, except to the extent modified by any new agreement.") (citing 17A Am.Jur.2d Contracts § 500; Restatement (Second) of Contracts § 279 (1981)). The management-rights clause is no escape hatch and no grounds for summary judgment (at least not across-the-board) for Host.

## B. Obligation to Backfill

Host next argues that because the Settlement Agreement "is silent as to the duration of each new position or to staffing terms generally," once those positions were initially filled, Host's obligations were satisfied. Def.'s Br. at 12. In other words, Host asserts that it is not required to "backfill" any of the newly-provided for positions once they become vacant due to turnover and thus, to the extent that Unite Here's claims are based on such subsequent vacancies, Host is entitled to summary judgment. This argument also fails.

The reason it fails is Paragraph 4 of the Agreement: "Any opening created due to transfer, resignation, or termination will be posted the following Monday." Settlement Agreement ¶ 4. Host's contention that the Agreement did not envision an obligation to refill positions undergoing natural turnover is belied by this provision, which requires that Host promptly advertise the positions once they

become vacant. Sure, it does not say that Host must *fill* the vacancies, but the obligation to post them as quickly as the following Monday mirrors Host's requirement under the Agreement to "utilize its best efforts to complete the hiring set forth" in the first place. *Id.* ¶ 2(f).

The quick-changing nature of the workforce at O'Hare food outlets, with frequent departures and new arrivals (if only the flights departed and arrived so quickly), which Host generally emphasizes to justify the need for flexibility in its practices, actually cuts in the union's favor on this point. *See* Def.'s Br at 1-2, 12 (noting that "turnover in a workforce the size of Host's at an airport the size of O'Hare is commonplace"). It is hard to envision that Unite Here meant to resolve its underlying staffing grievance with a provision that Host create and fill new positions *once*, well aware that with the realities of turnover these would naturally be empty soon (and repeatedly again thereafter). Indeed, language in the Side Letter reinforces the opposite view, stipulating not only a 180-day time commitment for each of the new floaters hired under the Settlement Agreement but the requirement that Host "ensure that any current or *future* employee accepting this role is fully aware of this [time] constraint." Side Letter ¶ 7 (emphasis added). The relevant provisions of the Agreement and the Side Letter can only be interpreted to mean that the parties intended for the newly created positions to represent some form of an ongoing staffing resolution, rather than a one-off hiring.[5] Host, which

---

[5]Host will naturally protest that this reading means that its hands are tied on business decisions about staffing levels for the positions identified in the Settlement Agreement "in perpetuity." *See* R. 25, Def.'s Reply Br. at 8. Two responses come to mind to assuage such fears. First, the Settlement Agreement can only last as long as the underlying

fails to mention Paragraph 4 (or the cited Side Letter language) at all in its briefs, adduces nothing to prove otherwise. Because Host's categorical argument that its obligations ended with the initial hires of the new positions is unsupported, Host cannot rely on this argument to win summary judgment.[6]

### C. Specific Positions

The Court turns then to the specific staffing disputes raised by Unite Here in its summary-judgment motion. The result is a split-decision.

---

collective bargaining agreement does (because the grievance which the Agreement resolves arose under it). Because the current CBA expires in June 2017, Host is locked-in for less than two years, a reasonable period. Second, if something were to occur even in those two years to completely change the lay of the land (for example, the airline that calls Concourse G home goes bankrupt and passenger traffic vanishes, meaning that keeping a Chili's open there, let alone staffing two expediters, becomes untenable), Host could still try and assert contractual defenses like impracticability and commercial frustration if the circumstances were appropriately dire (though the reality is, if the union is sensible, the parties would renegotiate staffing requirements given their intertwined interests in such an event). *See Ner Tamid Congregation of N. Town v. Krivoruchko*, 638 F. Supp. 2d 913, 924 (N.D. Ill. 2009) (outlining common law defenses). The real takeaway is that the Settlement Agreement could very easily have, and should have, been drafted with an eye towards these kinds of contingencies.

[6]Host argues that even though it believes it was under no obligation to backfill, it did make best efforts to hire replacements after the initial hires left the jobs. Def.'s Br. at 12-13. Host offers a list of such backfill hires (it is unclear if the list is meant to be exhaustive). Def.'s Reply Br. at 7-8 (citing list attached to Issa Decl., R. 18-1, Exh. A). But unless these hires pertain directly to one of the positions Unite Here alleges has not been adequately staffed (such as Leon Cathey, replacing Narcisco Albis as a floater, described below), they are not really relevant to the analysis at hand.

## 1. Expediters

### a. G Concourse Chili's

The Settlement Agreement states that Host will increase staffing at the G Concourse Chili's by two expediters. Settlement Agreement ¶ 2(a). Remember that Unite Here asserts that, as of early April 2015,[7] there was only one, part-time expediter, Jennifer "Carlin," while Host counters that it has two expediters, a Jennifer "Cameron," who is full-time, and Alexander Williams. PSOF ¶¶ 23, 24; Def.'s Resp. PSOF ¶¶ 23, 24. But Host concedes that Williams "floats in between multiple Chili's to fill in." *Id*. ¶ 23. The company asserts that it has nonetheless "satisfied Section 2(a) of the Settlement," *id.* (citing Issa Decl. ¶ 17), but that legal conclusion is unsupported and inaccurate. Host agreed to "increase staffing" by adding two expediters *to the G Concourse Chili's*, not one full time (crediting Host's contention that Carlin/Cameron is full time) and one that is in fact shared between several locations. In face of the precision with which the parties negotiated which outlets would receive additional employees, Host's assertion that having such a "fill-in" "floater" is sufficient under the Agreement is untenable (indeed, the Agreement even provides for additional floaters separate and apart from expediters). Summary judgment is granted to Unite Here on the issue of the number of expediters at G Concourse Chili's.

---

[7]For this dispute, as well as those over the other positions, the parties describe alleged violations of the staffing requirements as they have occurred in 2015, well after the filing date of the complaint in this action in December 2014. Unite Here for instance picks certain weeks in March and April 2015 to describe Host's alleged non-compliance, without giving any reasoning for whether they are particularly illustrative. (Indeed, given the open-ended nature of the allegations, many of the supposed inadequate staffing situations could

### b. Daily Staffing

The Agreement also provides that "[a]ny outlet with an expediter classification will have at least one expediter staffed 7 days per week for all hours when expediter work is expected to take place." Settlement Agreement ¶ 2(a). The parties do not contest that each location needs an expediter every day of the week. PSOF ¶ 32. As recounted, Unite Here has laid out a list of O'Hare outlets and days of the week where this requirement is not being met. *Id.* ¶¶ 26-31. For its part, Unite Here offers a mix of responses, but most do not create a dispute of fact and do not defeat the union's motion.

First, the company purports to deny the union's factual allegation that no expediter is scheduled at Wicker Park Sushi two days of the week, but adds that the expediter at that location is "scheduled to work five days a week." Def.'s Resp. PSOF ¶ 26. There are seven days in a week, of course, so Host's response actually confirms Unite Here's assertion that no expediter is staffed for two days. Next, Host admits that it did not have an expediter scheduled for part of the week at the Chicago Blackhawks outlet, *id.* ¶ 28, but justifies it on the basis of the catch-all management-rights clause, a defense that is meritless for the reasons already given. Host also admits the lack of an expediter at Wolfgang Puck Café and Macaroni Grill, stating that the usual expediter was out on maternity leave but returned by

---

be now resolved, at least for some weeks.) The Court follows the parties' lead. But Unite Here is warned that the complaint, despite its broad wording about how Host "has committed and is committing violations of the Settlement," Compl. ¶ 19, does not turn the Court into a grievance referee for all disputes arising under the Settlement Agreement from here on out. Now that the Court has provided some clarity to the parties' legal obligations under the Agreement, which have been the subject of contestation, it is in the parties' best interests to consider settlement of this industrial-relations matter.

mid-April in each case. *Id.* ¶¶ 29-30. Yet this assertion, even taken as true, does not actually excuse Host's non-compliance, because the Agreement is clear that "at least one expediter [be] staffed 7 days per week for all hours." It would be another matter if the expediter had come down with a sudden illness at the last minute—the Agreement is clear that Host's staffing obligations are tied only to its best efforts, which makes sense when dealing with real-world workforce circumstances—but Host's conclusory defense that the expediter was on maternity leave, which appears to be a planned occurrence in this instance, does not absolve Host of its clearly expressed duty to slot an expediter during those absences. Host makes no argument for why it should.

The only location for which Host does raise a material dispute of fact is the Terminal 2 Chili's. Unite Here asserts that no expediter was scheduled for five days (at least for the week cited of March 20-26, 2015). PSOF ¶ 27 (relying on knowledge of union shop steward). Host responds that Corey Finney was scheduled for the entire week, with Leamhsi Velez filling in on two of the days. Def.'s Resp. PSOF ¶ 27 (citing a purported employee schedule, R. 18-1, Exh. D). For this particular outlet, it seems that there is a classic example of union-said, company-said, which of course must be resolved by a trier of fact. With the exception of the claim on Terminal 2 Chili's, summary judgment is appropriate in Unite Here's favor on the claims that Host is not staffing expediters on a daily basis.

## 2. Hosts

### a. Macaroni Grill

Under the terms of the Agreement, Host is obligated to staff two hosts on Macaroni Grill's p.m. shift. *See* Settlement Agreement ¶ 2(b). According to Unite Here, Host scheduled only one host for the p.m. shift for one particular day, the Thursday of the week of March 20, 2015. PSOF ¶ 35. Host responds that it *did* schedule a host that day, but the person did not show up to work. Def.'s Resp. PSOF ¶ 25 (citing Macaroni Grill schedule, R. 18-1, Exh. G). Contrary to the union's position, its factual assertion that one host position was unfilled for one day is insufficient to warrant summary judgment in its favor. The Settlement Agreement obligates Host to use best efforts to fill positions with incumbents (not ensure that these incumbents show up at all costs), and Unite Here offers nothing to suggest that Host did not do so. To find liability for a breach of Host's ongoing staffing requirements on the basis of a one-off, last-minute no-show employee, who was otherwise staffed by the company, is unwarranted. Host is granted summary judgment on this claim.

### b. Tuscany

Host also agreed to staff two hosts in Tuscany's dining room for the afternoon shift. *See* Settlement Agreement ¶ 2(b). Unite Here asserts that only one host has been staffed, PSOF ¶ 34; Host concedes as much but blames the vacancy on employee turnover, Def.'s Resp. PSOF ¶ 34. According to its human resources manager, Host filled the position as required, and then saw a host of hosts take and

then depart the job. Issa Decl. ¶ 22. As of late April 2015, a candidate had been interviewed and the company "hope[d] to fill [the position] shortly." *Id*.

Like the Macaroni Grill controversy, the Court determines that summary judgment should be awarded to Host as to the Tuscany-host imbroglio. As discussed in the context of backfilling, Host is obliged to make best efforts to keep the positions staffed, including posting any vacancy by the following Monday. All Unite Here alleges is that only one host has been staffed, without disputing the fact that Host attempted to fill, and did successfully for at least part of the time, the second slot. Unite Here does not adduce anything that might show that these attempts were inadequate under the Agreement—it is unknown how long the vacancies lasted, for instance. On the facts presented, because of these shortcomings in Unite Here's allegations and because Host has by contrast asserted that it has attempted to keep the host position filled, summary judgment is granted to the company.

### 3. Floaters

Finally, the parties agreed that, as part of the 14 floaters to be hired, one would be assigned as a midday host at Macaroni Grill. *See* Settlement Agreement ¶ 2(e); Side Letter ¶ 4(3). The parties do not dispute that Host initially hired Narcisco Albis for this position, though they debate when. PSOF ¶ 39 (asserting he was hired in June 2014); Def.'s Resp. PSOF ¶ 39 (Albis hired in May 2014). More importantly, Unite Here contends that Host transferred Albis to another restaurant in January 2015 and never replaced him with another midday floater at Macaroni Grill. PSOF ¶¶ 40-43. Host contends that it did replace Albis, who was transferred

in February not January, with Leon Cathey on April 27, 2015. Def.'s Resp. PSOF ¶¶ 42-43.

On this issue, neither party has met its burden to earn summary judgment. Accepting the evidence in its favor, Host has shown that it did in fact replace Albis, but, unlike the dispute over the host position at Tuscany discussed above, it provides no other context about this vacancy-process. All that the facts show is that Albis left in either January or February and Cathey was hired in late April. There is no basis on the parties' papers to conclude that Host, one way or the other, satisfied (or did not satisfy) its obligation to backfill the position consistent with its best efforts, as required by the Settlement Agreement. The Court likely could have granted summary judgment to Host on this point had it provided the sort of information it did for how it handled the turnover for the Tuscany host position (details about when the position was posted, who was interviewed, and so on). Host did not. But because Unite Here cannot similarly show that Host did *not* refill the position with something short of best efforts, summary judgment is not merited for either side.

## IV. Conclusion

As discussed in this Opinion, the parties' cross-motions for summary judgment are each granted in part and denied in part. To recap: Host's catch-all motion for summary judgment on the basis of the management-rights clause and the lack of a duty to backfill positions is denied; Unite Here's motion for summary judgment on the issue of the number of expediters at G Concourse Chili's is granted,

as is its motion on the issue of daily staffing of expediters, with the one exception of the Terminal 2 Chili's claim; Host is granted summary judgment as to Unite Here's claims related to host-staffing at Tuscany and Macaroni Grill; and, both party's motions are denied with respect to the dispute over the midday floater at Macaroni Grill. The status hearing of September 3, 2015, shall remain in place. In advance of it, the parties shall engage in prompt settlement negotiations and, if no settlement is reached, submit a joint status report (by August 31, 2015) to set forth the parties' positions on the form of the hearing needed to resolve the fact disputes, and how otherwise to move the case forward.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 11, 2015